No. 101,438

STATE OF KANSAS, *Appellee*, v. ERIC F. HUERTA, *Appellant*.

(247 P.3d 1043)

Review of the involuntary dismissal of the appeal by the Court of Appeals on May 21, 2009. Opinion filed March 18, 2011.

*Richard Ney*, of Ney, Adams & Sylvester, of Wichita, argued the cause and was on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause for appellee.

The opinion of the court was delivered by

BEIER, J.: This case arises on petition for review from the Court of Appeals' dismissal of defendant Eric Huerta's sentencing appeal for lack of jurisdiction under the authority of K.S.A. 21-4721(c)(1). Huerta challenges the constitutionality of this statute, arguing for reversal and remand to the Court of Appeals for consideration of each of his issues on the merits.

Huerta was sentenced to consecutive presumptive sentences totaling 372 months' imprisonment after his guilty pleas in two multiple-felony cases. He argued in his brief to the Court of Appeals that the State violated due process by presenting false information during his sentencing hearing, that his sentence was disproportionate to his co-defendant's sentence, and that the State impermissibly urged the sentencing judge to rely on his post-arrest si-

lence. Given the dismissal of Huerta's appeal, the Court of Appeals did not reach the merits of any of Huerta's arguments. The Court of Appeals also denied Huerta's motion to reinstate his appeal.

In his petition for review to this court, Huerta argued that the dismissal under K.S.A. 21-4721(c)(1) violated due process and equal protection. He also asserted that, when a sentencing appeal relies on a constitutional argument, as at least two of his issues do, even a sentence that falls within a presumptive grid box is not truly "presumptive." Huerta cited our decision in *State v. Johnson*, 286 Kan. 824, 190 P.3d 209 (2008), to support this last position; he also cited *State v. Dillon*, 44 Kan. App. 2d 1138, 244 P.3d 680 (2010), during oral argument before this court.

Constitutional questions such as those posed by Huerta here raise issues of law, and this court's review is unlimited. *Johnson*, 286 Kan. at 842 (construction of Kansas Sentencing Guidelines Act [KSGA], determination of constitutionality of provisions questions of law). Moreover, this case requires us to interpret K.S.A. 21-4721(c).

"When courts are called upon to interpret statutes, the fundamental rule governing our interpretation is that 'the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.' *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, '[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent.' *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004)." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754-55, 189 P.3d 494 (2008).

This court has further stated:

"Where a statute's language is subject to multiple interpretations, however, a reviewing court 'may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]' *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000). Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). We ascertain the legislature's intent behind a particular statutory

provision 'from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989); see also *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases that require statutory construction, 'courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.' Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975)." *Bremby*, 286 Kan. at 754-55.

## THE STATUTE AT ISSUE

K.S.A. 21-4721(c)(1) states: "On appeal from a judgment or conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review: (1) Any sentence that is within the presumptive sentence for the crime." K.S.A. 21-4703(q) defines "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history."

## EQUAL PROTECTION

Huerta contends that K.S.A. 21-4721(c)(1) violates the Equal Protection Clause of the United States Constitution, and he provides two examples to demonstrate.

First, Huerta argues, under K.S.A. 21-4721(e)(1), a defendant could appeal a departure sentence resulting from partiality, prejudice, oppression, or corrupt motive—*e.g.*, a sentencing court imposes an upward departure on an African-American defendant because of racial prejudice. But K.S.A. 21-4721 would not permit an appellate court to review the imposition of a presumptive sentence, even if the sentence is based on that same racial bias. Huerta contends that there is no rational basis to permit an appellate court to review a departure sentence based on partiality, prejudice, oppression, or corrupt motive while denying it the opportunity to review a presumptive sentence resulting from the same partiality, prejudice, oppression, or corrupt motive.

Second, Huerta argues that this court has reviewed a claim that consecutive presumptive misdemeanor sentences were disproportionate and violated the Eighth Amendment. He cites *State v. Snow*, 282 Kan. 323, 346-47, 144 P.3d 729 (2006), in which we applied an abuse of discretion standard when the appellant complained not that a statute was unconstitutional, but that his particular sentence was unconstitutional. Huerta asserts that there is no rational basis to prohibit review of a constitutional challenge to consecutive presumptive felony sentences.

Our first step in equal protection analysis is determination of whether the legislative classification at issue results in arguably indistinguishable classes of individuals being treated differently. Only if there is a differential treatment of similarly situated individuals is the Equal Protection Clause implicated. *State v. Salas*, 289 Kan. 245, 248, 210 P.3d 635 (2009) (citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 [1985] [guiding principle of equal protection analysis is that similarly situated individuals should be treated alike]; *Hodges v. Johnson*, 288 Kan. 56, 72, 199 P.3d 1251 [2009]; *State v. Denney*, 278 Kan. 643, 652, 101 P.3d 1257 [2004]). This court has recognized that it is the burden of the party raising an equal protection complaint to demonstrate that he or she is similarly situated to others treated differently. *Salas*, 289 Kan. at 249.

Unless a party meets his or her "similarly situated" burden, we do not move to our second step in equal protection analysis, *i.e.*, determination of the nature of the rights affected by the classification and thus the level of scrutiny applied: strict scrutiny, intermediate scrutiny, or rational basis. *Salas*, 289 Kan. at 248-49. We note, however, that this court has applied the rational basis test to an Equal Protection Clause challenge to a criminal statute. *State v. Denney*, 278 Kan. 643, 651-52, 101 P.3d 1257 (2004). If a litigant has not demonstrated himself or herself to be similarly situated to those in a favored group, we also do not move to the last step of equal protection analysis, *i.e.*, application of the appropriate level of scrutiny to determine whether a classification passes muster. *Salas*, 289 Kan. at 249.

A preliminary note is necessary before we turn to whether Huerta is similarly situated to defendants permitted under K.S.A. 21-4721(e)(1) to challenge departure sentences as the products of partiality, prejudice, oppression, or corrupt motive.

Defendants such as Huerta used to be permitted to appeal on the same grounds as those subject to departure sentences. A 1995 statutory amendment altered the language of K.S.A. 21-4721(e)(1). See K.S.A. 1994 Supp. 21-4721(e)(1); *State v. Flores*, 268 Kan. 657, 658, 999 P.2d 919 (2000). Before the amendment, Kansas appellate courts also reviewed presumptive sentences for partiality, prejudice, oppression, or corrupt motive. See, *e.g., State v. Windom*, 23 Kan. App. 2d 429, 430-31, 932 P.2d 1019, *rev. denied* 262 Kan. 969 (1997); *State v. Clark*, 21 Kan. App. 2d 697, 699-700, 907 P.2d 898 (1995), *rev. denied* 259 Kan. 928 (1996); *State v. Bost*, 21 Kan. App. 2d 560, 571-72, 903 P.2d 160 (1995); *State v. Peal*, 20 Kan. App. 2d 816, 821-22, 893 P.2d 258, *rev. denied* 257 Kan. 1095 (1995); *State v. Myers*, 20 Kan. App. 2d 401, 403, 888 P.2d 866 (1995); *State v. Starks*, 20 Kan. App. 2d 179, 183, 885 P.2d 387 (1994). After the amendment, this court determined that appellate courts no longer had jurisdiction to review appeals of presumptive sentences, even if those appeals were based on claims of partiality, prejudice, oppression, or corrupt motive. *Flores*, 268 Kan. at 659.

There is no pertinent legislative history explaining the reasoning behind the 1995 amendment of K.S.A. 21-4721(e). In the absence of such evidence of legislative intent, we presume an alteration to statutory language to effect a substantive change in the law. See *State v. Preston*, 287 Kan. 181, 184, 195 P.3d 240 (2008). Here, that means that the legislature intended to remove presumptive sentences from the ambit of appellate review.

At oral argument, Huerta contended that, had he merely moved unsuccessfully for downward departure, then an appellate court could have reviewed his sentence under K.S.A. 21-4721. But the factual premise of this comparison is inaccurate. K.S.A. 21-4721(a) provides: "A departure *sentence* is subject to appeal by the defendant or the state." (Emphasis added.) Merely moving for a departure sentence does not grant the right of appeal to a defendant, if the result of the motion is a presumptive sentence. See K.S.A.

21-4721(c)(1). The only defendants permitted to appeal are those sentenced to an upward departure on the State's motion or the court's notice, see K.S.A. 21-4721(d) and (e), K.S.A. 21-4718(a)(3) and (b)(1), or those who seek a downward departure to a specific term and who receive the departure but to a term longer than the one sought, see K.S.A. 21-4721(d). It is these defendants to whom Huerta must demonstrate he is similarly situated.

We hold that he has not done so.

The process for arriving at a departure is completely different from that for arriving at a presumptive sentence. In imposing a departure sentence, the sentencing court must state on the record at the time of sentencing the substantial and compelling reasons for the departure. K.S.A. 21-4716(a). In addition, when an upward durational departure is under consideration, "any fact that would increase the penalty for a crime beyond the statutory maximum, other than a prior conviction, shall be submitted to a jury and proved beyond a reasonable doubt." K.S.A. 21-4716(b). An appellate court's review of a departure sentence is limited to whether the sentencing court's findings of fact are supported by substantial competent evidence and whether the factors they underlie are substantial and compelling reasons for departure. K.S.A. 21-4721(d); *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). There is significant latitude for a sentencing judge's exercise of discretion. See *State v. Favela*, 259 Kan. 215, 243-44, 911 P.2d 792 (1996).

On the other hand, when handing down a presumptive sentence, the discretion of the sentencing judge is narrowly circumscribed. K.S.A. 21-4704 requires the court to impose one of three sentences within the Kansas Sentencing Guidelines Act's drug or nondrug grid box, which contains a lower, middle, and upper number for the term of months. Selection of one of those numbers does not require the court to state any particular findings on the record. See *Johnson*, 286 Kan. at 851-52. Indeed, the principal point of enacting the KSGA was " 'to standardize sentences so that similarly situated offenders would be treated the same, thus limiting the effects of racial and geographic bias.' " *State v. Paul*, 285 Kan. 658, 667, 175 P.3d 840 (2008) (quoting *State v. Bandy*, 25 Kan. App. 2d 696, 699, 971 P.2d 749 [1998]).

We acknowledge the emotional appeal of Huerta's hypothetical concerning an overtly racist judge imposing the top number in a grid box for no reason other than his or her prejudice against a minority defendant. But emotional appeal cannot appellate jurisdiction make. And, as we have held before, the legislature generally can delineate the boundaries of appellate jurisdiction. *Gleason v. Samaritan Home*, 260 Kan. 970, Syl. ¶ 5, 926 P.2d 1349 (1996). Here, it appears to have made a deliberate choice in 1995 to eliminate appeals of presumptive sentences, even if they result from partiality, prejudice, oppression, or corrupt motive. Given the protections from sentencing judge discretion run amok inherent in the KSGA's grid ranges, that choice does not cross a constitutional line.

Because we do not find that Huerta is similarly situated to those defendants who receive departure sentences, we do not reach the remaining two steps of equal protection analysis on his first argument.

Huerta's second equal protection argument depends upon his being similarly situated to the defendant in *Snow*, who was given, *inter alia*, consecutive presumptive sentences for multiple misdemeanors and whose disparate sentencing appeal was considered on its merits.

This second equal protection argument also fails.

In *Snow*, the defendant was convicted of several felonies and misdemeanor offenses, and the sentencing court ordered his sentences for each offense to run consecutively to one another. Because of K.S.A. 21-4720(b), his total sentence for the felonies was limited to twice the base felony sentence. But K.S.A. 21-4720(b) does not apply to misdemeanor sentences, and his consecutive misdemeanor sentences were not truncated. The defendant therefore advanced a sentencing disparity argument on appeal, asserting that, had he committed all felony-level offenses rather than some misdemeanor-level offenses, his total sentence would have been shorter. *Snow*, 282 Kan. at 346-47.

This court recognized that the *Snow* defendant was not arguing that the sentencing statutory scheme was unconstitutional; rather, he was arguing that his particular sentence was unconstitutional. We relied on an abuse of discretion standard, 282 Kan. at 347, and

held that the misdemeanor sentences were not grossly dispropor-
tionate under the Eighth Amendment. We declined to analyze his
challenge to his misdemeanor sentences any further. *Snow*, 282
Kan. at 348 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct.
1166, 155 L. Ed. 2d 144 [2003]; *Ewing v. California*, 538 U.S. 11,
23-24, 123 S. Ct. 1179, 155 L. Ed. 2d 108 [2003]).

*Snow* cannot help Huerta. The defendant in *Snow* had been
sentenced for multiple felonies and multiple misdemeanors, and it
was the combination of felony sentences and misdemeanor sen-
tences that triggered appellate review. In addition, application of
K.S.A. 21-4721(c)(1) to prevent consideration of the consecutive
presumptive misdemeanor sentences was not raised or argued in
*Snow*; consequently, it was not the focus of this court's decision.
We hold that Huerta and the defendant in *Snow* are not similarly
situated; without that threshold determination, we do not proceed
with equal protection analysis based on *Snow*.

## DUE PROCESS

In his petition for review to this court, Huerta devoted only a
couple of sentences to his due process argument, claiming that the
Court of Appeals' dismissal of his appeal under K.S.A. 21-
4721(c)(1) without consideration of the merits was unfair and ar-
bitrary. He did not engage in either a full substantive or a full
procedural due process analysis. Indeed, he did not elaborate on
his due process claim at all. Further, his counsel made no mention
of a due process claim at oral argument before this court. Mere
characterizations of a statute's application as "unfair" and "arbi-
trary" do not constitute a sufficient due process argument, and we
hold that Huerta has abandoned this issue on appeal. See *State v.
Holmes*, 278 Kan. 603, 622, 102 P.2d 406 (2004) (issue not ade-
quately briefed deemed abandoned).

## *JOHNSON* AND *DILLON*

Huerta has also argued that the Court of Appeals had jurisdiction
to decide the merits of this appeal because he raised constitutional
claims. He contends that, under the recent Court of Appeals de-
cision in *State v. Dillon*, 44 Kan. App. 2d 1138, 244 P.3d 680,

(2010), and our decision in *State v. Johnson*, 286 Kan. 824, 190 P.3d 209 (2008), a sentence that violated the constitution does not qualify as "presumptive" and therefore an appellate court has jurisdiction to hear the merits of a defendant's appeal.

In *Dillon*, the defendant argued that the district judge failed to consider the proportionality of his individual sentence. The Court of Appeals stated that, in determining jurisdiction, it was faced with three questions: (1) Did the district judge consider the argument defendant made in his departure motion? (2) If not, did the district judge's failure to consider that argument deny defendant due process? and (3) If the answer to the first two questions was yes, did the district judge's violation of defendant's due process rights at sentencing provide an exception to the general rule that this court has no jurisdiction to consider the appeal of a presumptive sentence? 44 Kan. App. 2d at 1140. The Court of Appeals concluded that the district judge failed to consider defendant's argument regarding individual proportionality, that the failure denied defendant due process, and that this violation of due process provided an exception to K.S.A. 21-4721(c). The Court of Appeals relied on *Johnson* to conclude that, "[w]hen the district court's sentencing procedures violate the constitution, the sentence is not considered a presumptive sentence." 44 Kan. App. 2d at 1144 (citing *Johnson*, 286 Kan. at 841-42).

*Dillon* substantially overread our decision in *Johnson*. *Johnson* was a challenge to the statutory scheme for sentencing, arguing that the discretion granted a sentencing judge to assign the upper grid box term without requiring additional fact-finding by a jury violated *Apprendi. v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Johnson*, 286 Kan. at 840. In other words, the defendant in *Johnson* mounted a facial challenge to the design of the KSGA; his argument was not limited to his case alone. *Johnson*, 286 Kan. at 842. We concluded that the sentencing scheme did not violate *Apprendi*; and, because Johnson's individual sentence was presumptive, we did nothing further, concluding that we had no jurisdiction under K.S.A. 21-4721(c)(1). *Johnson*, 286 Kan. 851-52.

We have conducted the same type of analysis of the overall statutory scheme for sentencing and come to similar conclusions in cases other than *Johnson*. See *State v. Bramlett*, 273 Kan. 67, 67-68, 41 P.3d 796 (2002) (imposition of consecutive sentences does not violate *Apprendi*; court without jurisdiction to review presumptive sentences); *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002) (use of criminal history score to impose presumptive sentence does not violate *Apprendi*; court without jurisdiction to review presumptive sentences). In contrast, we do not review cases such as Huerta's on direct appeal, when a defendant merely argues that his or her individual presumptive sentence has a constitutionally based infirmity. See *State v. Clemons*, 273 Kan. 328, 343-44, 45 P.3d 384 (2002) (court without jurisdiction to review presumptive sentence, when defendant argued sentence constituted cruel, unusual punishment).

*Dillon* also relied on a prior Court of Appeals decision, *State v. Cisneros*, 42 Kan. App. 2d 376, 212 P.3d 246 (2009), which it read to grant appellate jurisdiction to review a presumptive sentence when the district judge had misunderstood the limits of his or her discretion in sentencing after a revocation of probation. *Dillon*, 44 Kan. App. 2d at 1145. In *Cisneros*, the defendant appealed because the district judge believed he had no power to reduce Cisneros' sentence upon a probation revocation, despite language to the contrary in K.S.A. 22-3716(b). The Court of Appeals determined that this was a question of law over which it had jurisdiction. 42 Kan. App. 2d at 379. The court went on to state that, if it dismissed Cisneros' appeal for lack of jurisdiction under K.S.A. 21-4721(c)(1), "then Cisneros would have no remedy to determine whether the district court properly applied K.S.A. 22-3716(b) in his case." 42 Kan. App. 2d at 379. *Cisneros* is plainly factually and procedurally distinct from the situation before the Court of Appeals in *Dillon*, and *Dillon*'s reliance on *Cisneros* was misplaced.

We also observe that the *Dillon* panel looked to the merits of Dillon's appeal to determine whether the Court of Appeals had jurisdiction rather than determining the existence of jurisdiction before considering the merits. If subject matter jurisdiction is in question, that issue needs to be resolved first. The merits come

second. See, *e.g.*, *In re Adoption of Baby Girl P.*, 291 Kan. 424, 428-29, 242 P.3d 1168 (2010) (jurisdiction a preliminary matter for court to consider); *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010) (jurisdiction a preliminary question for court to consider before addressing issues argued by parties).

Finally, do our holdings in this case leave a defendant who believes there has been constitutional error in arriving at his or her individual presumptive sentence but who does not challenge the facial constitutionality of the sentencing scheme with no remedy? No, not necessarily. It may be that constitutional error so infects the sentence that it qualifies as illegal under K.S.A. 22-3504; *State v. Pennington*, 288 Kan. 599, 601, 205 P.3d 741 (2009). And a motion under K.S.A. 60-1507 remains an option, albeit one with additional hurdles for the movant to overcome.

Affirmed.